UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------X **Docket#**
UNITED STATES OF AMERICA,     : 20-cr-00549(AMD)
                                  :
               Plaintiff,    :
                                  :
      - versus -           : U.S. Courthouse
                                  : Brooklyn, New York
                                  :
COREY MARTIN, et al.,      :
                                  : July 26, 2021
              Defendants.   : 10:30 a.m.
-----------------------------X

TRANSCRIPT OF BOND APPLICATION HEARING
BEFORE THE HONORABLE SANKET J. BULSARA
UNITED STATES MAGISTRATE JUDGE


**A   P   P   E   A   R   A   N   C   E   S:**
**(VIA VIDEO/AUDIO)**

(Indiscernible/inaudible portions in transcript due to audio recording)


**For the Plaintiff**:        **Tanya Hajjar, Esq.**
                             Emily J. Dean, Esquire
                             U.S. Attorney's Office,
                             Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, NY 11201

**For the Defendants**:      **Anthony Cecutti, Esq.**
                             Law Office of Anthony Cecutti
                             217 Broadway, Suite 707
                             New York, NY 10007




**Transcription Service**:   **Transcriptions Plus II, Inc.**
                             61 Beatrice Avenue
                             West Islip, New York 11795
                             RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          THE CLERK:  This is criminal cause for a bail
2     application.  Case No. 20-cr-549, United States versus
3     Corey Martin.
4          Counsel, starting with the government, please
5     state your appearances.
6          MS. HAJJAR:  Good morning, your Honor.  Tanya
7     Hajjar and Emily Dean for the government.
8          THE COURT:  Good morning.
9          MR. CECUTTI:  Good morning, your Honor.
10    Anthony Cecutti for Corey Martin, who's also present.
11         THE COURT:  Good morning, Mr. Cecutti.  Good
12    morning, Mr. Martin.
13         THE DEFENDANT:  Good morning, your Honor.
14         THE COURT:  Okay.  Before we begin I just want
15    to make sure that I have the -- excuse me -- relevant
16    submissions here.
17         I have, Mr. Cecutti, from you, a letter dated
18    the 24th of July, and I also have a letter from the
19    government, which is dated the 25th of July.  Is that --
20    and the government's submission attaches their prior
21    submission as Exhibit A.  Is that the total of the
22    government's submission?
23         MS. HAJJAR:  The total of the government's
24    submission, your Honor, there was a prior motion for bond
25    filed by Deirdre Von Dornum on June 15th as well.

Proceedings

1      THE COURT:  Okay.  But I have what you have --
2  I wanted to make sure I didn't miss anything that you had
3  filed recently.
4      MS. HAJJAR:  That's correct, your Honor.  Thank
5  you.
6      THE COURT:  Okay.  And Mr. Cecutti, do I have
7  what you have filed at this point?
8      MR. CECUTTI:  Yes, your Honor.
9      THE COURT:  Okay.  I also have a pretrial
10  services report that is an updated report from June for
11  Mr. Martin.  The parties have both seen that as well?
12      MS. HAJJAR:  Yes, your Honor.
13      MR. CECUTTI:  Yes, your Honor.
14      THE COURT:  Okay.  So I've read these
15  submissions.  I'm somewhat confused at the outset but,
16  Mr. Cecutti, I'll ask you first.
17      The submission you have provided seems to
18  suggest that the sole basis on which the government was
19  seeking detention and which detention has been granted is
20  risk of flight, and does not address dangerousness.  Is
21  that -- is there a reason for that?
22      MR. CECUTTI:  Your Honor, my understanding of
23  the Bail Reform Act is that as a threshold question there
24  needs to be a determination as to whether or not any of
25  the seven factors outlined in the 18 U.S.C. 3142(f) are

1 present.

2          3142(f) outlines five offenses by which the

3 government can move for detention.  None of those are

4 present in this case.  Mr. Martin has not been charged

5 with any of those offenses.  He's been charged with

6 essentially (indiscernible) or fraud offenses.

7          31(f) -- 3142(f) outlines in (f)(2) two other

8 bases, serious risk of flight, and serious risk that a

9 defendant may obstruct justice.  And we submit that none

10 of those factors are present in this particular case

11 based upon the facts.  And as such, dangerousness to the

12 community is not an applicable basis for detention based

13 upon the charges that Mr. Martin is presently facing.

14 Again, essentially fraud offenses.

15          THE COURT:  Do you have any case that

16 interprets the Bail Reform Act as you have suggested?

17          MR. CECUTTI:  Your Honor, I outlined the case

18 law, and the appropriate case law in our submission dated

19 July 24th.  And I also am relying on the submission by

20 federal defenders on I believe dated June 10th where

21 dangerousness in the context of the absence of an F-

22 factor relates only to the potential conditions or

23 combination of conditions that a defendant would be

24 released on pursuant to the factors outlined in 3142(g).

25          THE COURT:  Well --

1      MR. CECUTTI:  So I'm not saying that

2  dangerousness is totally irrelevant.  I'm saying it's not

3  a legal basis for detention, but it is relevant in terms

4  of deciding upon the release conditions that a defendant

5  should be released on based upon the charges that --

6  again, that Mr. Martin is currently facing.

7      THE COURT:  I don't understand, Mr. Cecutti,

8  the reason I asked you for a case that interprets the

9  Bail Reform Act as you've suggested, because it is a

10 quite curious interpretation of the Bail Reform Act.

11     3142(f) is the circumstances in which the Court

12 will hold a hearing.  However, the way you read it, it

13 reads to its exclusion out 3142, which says, that the

14 judicial officer shall order pretrial release of a person

15 ... unless the officer determines such a release will not

16 reasonably assure the appearance of a person required or

17 will endanger the safety of any person or community.

18     In other words, if a person is detained, I have

19 to order his release, unless I determine whether or not

20 the person is a flight risk or a danger of the community.

21     It is not dependent upon the government

22 shoehorning its application for a hearing into either

23 (f)(1) or (f)(2).

24     Why is that not correct?

25     MR. CECUTTI:  I think, your Honor, I tried to

1  explain it in a footnote in terms of the reading of

2  3142(f) in terms of where it's situated in the Bill

3  Reform Act, and --

4      THE COURT:  Well all your footnote says, with

5  respect, is it talks about (f)(1) and (f)(2).  It doesn't

6  talk about how the reading conflicts with 3142(b), which

7  is -- and how (f) deals with the circumstances in which

8  the government may request a hearing.

9      But also separate and apart from that, that's

10  why I began with the first question, what is the case

11  that stands for the proposition that this is the way the

12  statute ought to be read?  Which is to say, only in

13  certain categories of offenses do I -- must the

14  government proceed for me to have an ability to detain at

15  all.

16      So if there's a case that reads the statute

17  like you say it does I'd be happy to look at it, but you

18  just said I outlined the case law that you've suggested.

19  Why is my reading incorrect and why is yours correct?

20      MR. CECUTTI:  Your Honor, I will point to

21  United States versus Freedman, United States versus

22  Cluff, a First Circuit case, United States versus Hemler

23  (ph), a Third Circuit case, and United States versus

24  Morgan out of the Central District of Illinois, which in

25  that case it said, where none of the factors set forth in

1  3142(f) when they're present, dangerousness is only

2  relevant for purposes of choosing which, if any,

3  conditions accompanying an order of release are necessary

4  to ensure the appearance of the defendant.

5         THE COURT:  Well even the way you describe

6  those cases in your letter, it is illegal to hold a

7  detention hearing unless the government invokes one of

8  the factors.  Meaning --

9         MR. CECUTTI:  That's my position.

10        THE COURT:  -- those are the circumstances in

11  which I can hold a hearing, not the circumstances on

12  which I can decide whether or not to detain Mr. -- your

13  client, Mr. Martin, or anybody else for that matter.

14        Ms. Hajjar.

15        MS. HAJJAR:  Thank you, your Honor.

16        Just even for a moment crediting Mr. Cecutti's

17  argument that this legal argument that the Court is not

18  permitted to consider the fact that the defendant

19  committed a brutal murder in assessing the factors under

20  the Bail Reform Act because the crimes he's currently

21  charged with aren't -- don't constitute a crime of

22  violence.  So even crediting that, there's still

23  3142(f)(2) which allows the Court to consider all of

24  these factors, including the danger to the community and

25  the risk of flight if the Court, upon motion of the

Proceedings

1   government, you know, this is a case that involves a

2   serious risk of flight or danger of obstruction.  And

3   Judge Gold already found those factors to be true.  Judge

4   Gold already made a finding, that's docket entry 10, that

5   in detaining the defendant there was a serious risk of

6   the defendant's non-appearance and risk of danger.

7          And so that threshold determination, even

8   taking the defense counsel's argument as accurate, an

9   accurate reading of the Bail Reform Act, that threshold

10  determination was made, and thus the Court can consider

11  the fact that the government proffered evidence that the

12  defendant took life insurance policies out on a woman,

13  killed her, chopped her body up, and scattered her body

14  parts in Canarsie Park, and can consider the proffered

15  evidence in connection with that in determining whether

16  or not the defendant is a risk of flight or poses a risk

17  of danger, which of course the government submits he

18  does.

19         And so even putting aside whether counsel's

20  argument is right, even on its own terms, it fails.

21         Counsel says that Martin consented to

22  detention, but that's not right, that's not how the Bail

23  Reform Act works.  The defendant can't consent to

24  detention absent judicial finding that he poses a risk of

25  flight or non-appearance or a risk of danger, which Judge

Proceedings

1 Gold did find.

2 The defendant didn't make a bail application at

3 that point, didn't offer facts to mitigate those

4 circumstances, but that doesn't change the fact that a

5 judicial finding was made at that time.

6 And so, your Honor, even on the defendant's own

7 -- counsel's own terms, own reading of the Bail Reform

8 Act it fails.

9 THE COURT: So Mr. Cecutti, let's say -- I mean

10 if I take your argument -- and I apologize if I

11 misconstrued it -- to be saying what *Freedman* stands for,

12 which is the detention on the basis of dangerousness in

13 the absence of flight is not what -- is not permitted,

14 why isn't Ms. Hajjar right, that there's been a finding

15 of risk of flight here already, and that in considering

16 whether there remains a risk of flight I may consider the

17 uncharged conduct?

18 MR. CECUTTI: Your Honor, with respect to the

19 -- Mr. Martin's initial appearance and hearing before

20 Judge Gold, I did not represent Mr. Martin at that

21 appearance. However, my understanding is that there was

22 not a bail hearing, a contested bail hearing where

23 parties presented facts.

24 Judge Gold made findings, findings that were

25 not based upon a factual inquiry, rather made those

1  findings simply based on Mr. Martin's consent to

2  detention at the time.

3         So I do believe that there should be an inquiry

4  into whether or not he's a serious risk of flight.  And I

5  do agree that based upon this allegation that he murdered

6  the victim, that that does bear on whether or not he is a

7  serious risk of flight.

8         THE COURT:  And so what are you suggesting,

9  that at this point were the Court to find dangerousness

10  -- excuse me -- risk of flight, I would have to do it in

11  a particularized way?

12         MR. CECUTTI:  I believe that the only means by

13  which Mr. Martin can be detained is if the Court found,

14  through a factual inquiry, that he was a serious risk of

15  flight based upon the charges in the case filed against

16  him, along with any consideration of other facts under

17  3142(g), but that would include -- again I agree -- the

18  allegation that he murdered the victim, but again, only

19  as it bears on whether or not he's a serious risk of

20  flight.

21         THE COURT:  In other words, just so I

22  understand your argument, if I make a determination that

23  your client is a risk of flight, or in order to make that

24  determination I may consider anything in (g), including

25  the uncharged murder.

Proceedings

1        MR. CECUTTI:  Yes, but it must be a serious

2   risk of flight, it can't be an ordinary risk of flight.

3        THE COURT:  Fair enough.

4        MR. CECUTTI:  It must be a serious risk.

5        THE COURT:  Okay.  Ms. Hajjar?

6        MS. HAJJAR:  Yes, your Honor, I don't -- just

7   responding to counsel's argument about a fact -- a

8   judicial finding based on a proffered facts.

9        The government filed a detention letter in

10  advance of the defendant's arraignment and argued that --

11  very specifically argued that the proffered evidence and

12  the charges for which he's been charged, including

13  identity theft crimes in connection with a crime of

14  violence and aggravated identity theft crimes,

15  constitutes a risk of flight in this case.  And Judge

16  Gold ordered that the defendant be detained based on that

17  finding.

18       And so in the government's view that

19  determination has already been made on the facts, on the

20  proffered -- on the charges that are already present, and

21  the facts proffered by the government, which it's quite

22  clear that courts can rely on it in making determinations

23  with respect to bond.

24       So in the government's view, that threshold

25  determination has been made, and all of the other factors

Proceedings

1   that typically are considered as part of someone's -- an

2   evaluation as to whether someone poses a risk of flight

3   and a danger to the community, clearly in this case

4   militate towards a finding of dangerousness and flight

5   and warrant detention pretrial.

6         THE COURT:  Okay.  Mr. Cecutti, why does the

7   proffered evidence, even if I accept your argument for

8   now that Judge Gold didn't make a determination, okay, so

9   that this is the bail hearing where facts need to be

10  found, okay.  Why do the serious charges, combined with,

11  okay, and the serious charges -- to be clear, the serious

12  facts proffered by the government, which as far as I can

13  tell have been unrebutted, okay, in their detention

14  letter -- original letter, as well as the letter

15  proffered today, as well as the footnote in their letter

16  indicating that they intend to indict your client for

17  interstate murder, okay, constitute sufficient serious

18  risk of flight?

19        MR. CECUTTI:  Well let me respond first, your

20  Honor, by stating that -- going back to serious risk of

21  flight, again, because that's the standard here.  The

22  government has to present facts to show again more than

23  ordinary risk, and more than ordinary risk is something

24  more than an individual who's been charged with federal

25  crimes and facing imprisonment, which is an argument that

Proceedings

1  they've made in their detention memo.

2        Rather, Second Circuit case law, and I believe

3  other circuits have held, that the government has to show

4  in order to establish serious risk of flight, evidence

5  that an individual attempted to evade law enforcement in

6  the past or perhaps during an investigation, record of

7  non-appearance, a history of being a fugitive, or

8  subterfuge of some kind, or deceit aimed at evading

9  arrest, or obstructing an investigation.  None of that is

10 present in this case.

11        The government provides no other bases to

12 believe that Mr. Martin poses a risk of flight other than

13 what he's been charged with and facing in terms of a

14 prison sentence.

15        Now, in terms of the allegation that he

16 murdered the victim, I want to get that -- back to that

17 in a second, but let me just first establish some

18 important facts the government doesn't dispute.

19        The government doesn't dispute that Mr. Martin

20 is a U.S. citizen, he has no foreign ties, he's born and

21 raised in New York City, he's lived in the New York

22 City/New Jersey area his entire life, and his criminal

23 record is limited.  He has a conviction for a misdemeanor

24 DWI in which he made all of his court appearances in that

25 matter.

Proceedings

1    Now, in terms of the allegation, we don't

2  contest that such an allegation is incredibly serious,

3  but for two years prior to Mr. Martin's arrest in this

4  case -- so he was arrested in November of 2020 and the

5  victim was murdered in April of 2018 -- so from -- I want

6  to just talk about that time period -- from April of 2018

7  until November of 2020. The NYPD and the Brooklyn DA's

8  Office was engaging in an investigation into the murder

9  of Brandy Odom.  Mr. Martin knew that.  And not only did

10 he know that, he also was aware that both of those law

11 enforcement agencies were investigating him.  And he

12 continued to live in New York, he subsequently moved to

13 New Jersey, and he moved to New Jersey with his

14 girlfriend, partner at the time, Adelle Anderson, who's

15 also a co-defendant in the case, along with their newborn

16 child.

17    He didn't flee the jurisdiction, he didn't move

18 out of state, he didn't move out internationally, he

19 remained in the New York/New Jersey area the entire time.

20    He also was investigated -- I'm sorry -- he was

21 also interviewed by law enforcement, participated in an

22 interview.

23    I don't think there's any evidence whatsoever

24 that he obstructed that investigation, and that he was

25 cooperative with that investigation.

1    He made no efforts to conceal his whereabouts
2  whatsoever.
3        In July of 2021, the government continues to
4  say that they are going to charge him with this serious
5  crime.  They've been saying that, your Honor, to my
6  understanding since the inception of this federal case.
7  So back in November 2020 they made the same
8  representations to prior counsel.
9        Now it's over three years since this murder
10 was, and Mr. Martin has not been charged.
11       Yeah, he has again never concealed his
12 whereabouts, he didn't flee the jurisdiction, he didn't
13 do any (indiscernible) that he is a serious risk of
14 flight.
15       So we believe that the right result at this
16 point in time in the case is that he be released, and
17 should the government charge him down the road with this
18 serious crime, this murder, then we have a different
19 analysis, but at the present time he should be released.
20       THE COURT:  I'm sorry.  Ms. Hajjar?
21       MS. HAJJAR:  Thank you, your Honor.
22       I want to go back to the suggestion that this
23 is an allegation and refer your Honor to the fact that
24 Mr. Martin is currently charged with fraudulent use of
25 identification in connection with a crime of violence,

1  the murder of Brandy Odom, and that evidence even --

2          THE COURT:  Well on that point, okay, why does

3  that not put us in (indiscernible), okay, putting aside

4  risk of flight, why does that not put us in

5  3142(f)(1)(A), a crime of violence, which I believe in

6  the Dillard -- in the case -- in United States versus

7  Dillard, among other cases, the Second Circuit says that,

8  you know, it's not limited to a, quote, enumerated list

9  of offenses, but the offense by its nature must involve

10  the risk that force be used?  And I'll let Mr. Cecutti

11  respond to that, but why doesn't that get us out of this

12  whole quandary as it were?

13          MS. HAJJAR:  I agree that's a sensible reading

14  of the statute is one that -- that's how I would read the

15  statute, but I was -- I will concede there's ambiguity in

16  the Second Circuit case law about what precisely it means

17  when the statute says in connection with a crime of

18  violence.

19          There's some cases that suggest that what gets

20  you under (5)(1)(A) is a crime of violence whereby one of

21  the elements relates to the use of force.  I could not

22  find case law that clearly events that a charge like that

23  would by itself get under that category.  It may.

24          Certainly it seems to me that the word

25  involving a crime of violence would seem to encompass

1  cases where one is charged with use of fraudulent

2  identification in connection with a crime of violence,

3  but I wasn't able to determinatively conclude it would

4  fall under that category, and so --

5           THE COURT:  Fair enough.

6           MS. HAJJAR:  -- I think that's a sensible

7  approach, but I -- you know, if I had a case to suggest

8  that was unequivocally the case, I would have provided

9  your Honor with that case cite.

10          THE COURT:  But I think the *Dillard* case says

11 the use or risk of violence must result from the

12 categorical nature of the offense, and the commission of

13 the offense whose nature ordinarily does not give rise to

14 a substantial risk of violence would not qualify.

15          And I don't -- and here the defendant is

16 charged with aggravated identity theft, and is there --

17 do you have a view as to whether or not that aggravation

18 constitutes a categorical offense or an offense that

19 categorically can be described as one that involves

20 violence?

21          MS. HAJJAR:  I think the relevant statute, your

22 Honor, would be Count 3, which is the fraudulent use of

23 identification under 1028(a)(7).  And I -- the -- what's

24 clear to me reading what the elements are of this

25 statute, that the statutory enhancement for commission of

1  the crime in connection with a crime of violence requires

2  proof that the crime of violence occurred.  But whether

3  or not --

4            THE COURT:  In --

5            MS. HAJJAR:  -- the categorical approach -- I'm

6  sorry, your Honor.

7            THE COURT:  Sorry, what's the cite for that --

8  for the statute for --

9            MS. HAJJAR:  It's Title 18, United States Code

10  Section 1028(a)(7), that's the statute.  And then the

11  penalty provision, I can pull it up, I believe it's

12  1028(c)(3)(a) maybe.  I'll check, I'll look it up right

13  now.

14            THE COURT:  And we're talking about 1028 cap A

15  or non-cap A?

16            MS. HAJJAR:  Non-cap A.  It's 1028(b)(3)(B).  A

17  fine under this title or imprisonment for not more than

18  20 years, or both, if the offense is committed in

19  connection with a crime of violence.

20            THE COURT:  And the defendant is charged with,

21  in Count 3 1028(a)(7)?

22            MS. HAJJAR:  That's the provision, and the

23  penalty provision is governed, which has to be --

24            THE COURT:  I understand.

25            MS. HAJJAR:  -- proven.

Proceedings

1          THE COURT:  I understand.

2          But (a)(7), unlawful or connection with any

3   unlawful activity constitutes a violation of federal law

4   or constitutes a felony under applicable state or local

5   law.  And what is that felony?

6          MS. HAJJAR:  The wire fraud conspiracy charge

7   in Count 1.

8          THE COURT:  Okay.  And then the penalty

9   provision is in --

10         MS. HAJJAR:  It's (b)(3)(B).

11         THE COURT:  (b)(3)(B).  Okay.  All right.  I

12   understand.

13         Okay.  Go back to the point about risk of

14   flight then.

15         MS. HAJJAR:  So putting aside for a moment that

16   this is in fact what the defendant is charged with, the

17   defendant committed identity theft crimes, which courts

18   have considered relevant to assessing risk of flight.  He

19   is aware that he is -- the government intends to

20   supersede and charge a murder for hire in connection with

21   this conduct.

22         At the time of -- a day or contemporaneous with

23   when Brandy Odom's body parts were recovered from

24   Canarsie Park, the defendant engaged a garbage removal

25   company to remove, among other things, a mattress from

Proceedings

1  his home, which he shared with the victim, Brandy Odom,

2  who worked in commercial sex services for him.

3        He was not cooperative with law enforcement, as

4  suggested by counsel, he invoked his right to an attorney

5  and the interview was swiftly terminated.

6        He did, however, concede that in this interview

7  that he drove the vehicle, the black Nissan, which moved

8  in and out of his residence, consistent with the time at

9  which Ms. Odom's body parts were recovered from Canarsie

10 Park.

11       In the government's view, your Honor, this

12 threshold determination that counsel insists must be made

13 has been made by Judge Gold.  The defendant cannot

14 consent to detention, and did not consent to detention at

15 initial appearance.

16       The Court must make a finding to warrant

17 detention, which Judge Gold already found based on the

18 facts and based on the circumstances of this offense.

19       And so in the government's view, your Honor is

20 empowered to hear and consider all of the other factors,

21 including danger to the community, which is unequivocally

22 present as is risk of flight and as is the risk of

23 obstruction.

24       As the government set forth in its detention

25 letters, the defendant has multiple orders of protection

Proceedings

1  issued against him by the mother of his child and

2  co-defendant.  And at least one of these incidents

3  involved him threatening the life of his -- of this woman

4  and her unborn child.  And there's no question here the

5  history of domestic violence and that the courts have

6  found that relevant to assessing risk of danger, among

7  others, and the government submits in a risk of

8  obstruction as well.

9          THE COURT:  Now, can you tell me what is the --

10 without the uncharged murder what is the guideline range?

11         MS. HAJJAR:  I would have to -- I don't have it

12 handy, your Honor.  I know that the -- I will say that

13 the aggravated identity theft standing alone carries a

14 two-year mandatory minimum on top of the guidelines for

15 Counts 1 and Count 3.

16         The government would argue that Count 3 -- and

17 this has been a guidelines calculation that's been

18 adopted in other cases -- that the guideline calculations

19 for Count 3 would refer by nature of the fact that the

20 government has charged it in connection with a crime of

21 violence, which is a necessary part of the statute, would

22 trigger the guideline for first-degree murder, which

23 would make the guidelines extremely high.

24         I have to calculate it out, I haven't done so

25 for purposes of this hearing, but I can.

Proceedings

1     But that would be the government's view that a

2 first-degree murder guideline would be applicable here.

3     THE COURT:  One other -- one last question

4 before I turn to Mr. Cecutti.

5     One of the ways to deal with the sort of

6 conundrum that I have about how the statute should be

7 read, 3142(b) and 3142(f) that we've been talking about,

8 one deals with temporary orders of detention, the other

9 deals simply with order of detention following an entry

10 of a temporary detention.

11     And the point that -- the reason that becomes

12 pertinent, is if I were to deny Mr. Cecutti's

13 application, right, and it strikes me that this -- we're

14 in a situation where any appeal would not go before

15 another magistrate judge, but it would go before the

16 district judge assigned to the case.  Do you have any

17 view as to that?

18     MS. HAJJAR:  As to whether your Honor -- I'm

19 sorry -- as to whether there's a distinction drawn

20 between the provisions relate to a temporary or permanent

21 order of detention?

22     THE COURT:  Yes, which is -- in other words

23 we're now -- I mean the reason -- the (f) provisions

24 that's dealt with in the case law that we've been talking

25 about that has been highlighted, those are relevant when

Proceedings

1  seeking a permanent order of detention.  When they're

2  temporary orders and we're waiting for the hearing and

3  where there's leave to reopen, okay, we don't need to

4  perhaps go through those gating issues.

5            Now, you know, it's a little bit of a weird

6  ambiguity, but the reason I ask is, is the government

7  seeking a permanent order of detention?  Because I want

8  to make clear what Mr. Cecutti, if I were to deny, what

9  happens next, and we're not, you know, setting this up

10  for another magistrate judge, because if we're asking

11  simply for a temporary order of detention with leave to

12  reopen at some point, I don't even know if we're in the

13  3142(f) threshold gating and we're just in 3142(b), and

14  other provisions that deal with temporary orders.

15            MS. HAJJAR:  Your Honor, my experience in terms

16  of where the court orders a temporary order of detention

17  is that the court simply orders that as a holdover for a

18  set date for a detention hearing, but a permanent order

19  of detention doesn't often preclude counsel from filing

20  motions for bail.

21            Indeed in all of my cases in which are

22  permanent order of detention, or nearly all, counsel is

23  -- counsel continues to move for bail and those motions

24  for bail are considered, where appropriate, and sometimes

25  the court defers to the prior judicial findings.

1          But I --

2          THE COURT:  And so -- fair enough.  And what

3    was your view as to what Judge Gold was doing as between

4    issuing a temporary order of detention versus entering a

5    permanent order of detention with leave to reopen?

6          MS. HAJJAR:  Looking at ECF docket number 10,

7    your Honor, I'm looking at it now, and the court ticked

8    off, there is a serious risk of danger the defendant will

9    not appear, there's a serious risk the defendant with

10   endanger the safety of another, and the defendant --

11   leave is granted to reopen and present a bail package in

12   the future.

13          And so I read this, your Honor, as a permanent

14   order of detention with leave to renew a bail

15   application, should one become appropriate.

16          But the suggestion that courts may detain,

17   absent any finding of risk of flight or danger, is not --

18   the courts are not empowered to do so under the Bail

19   Reform Act.  There must be a finding to warrant

20   detention.

21          And so Judge Gold did find based on the nature

22   of the charges and the facts proffered in the

23   government's detention letter, and in fact indicated that

24   those findings had been made, and said that had clearly

25   on the record that the findings had been made, although

1 provided counsel leave to renew.  Of course counsel is

2 always provided in some form leave to renew.  The

3 question -- that's always available to counsel in terms

4 of -- it's a rare case where courts will not hear counsel

5 at all on these questions in terms of presenting a

6 package to mitigate a risk of flight or danger.  But here

7 those threshold findings were made.

8         THE COURT:  Okay.  Mr. Cecutti, we've covered a

9 lot of ground here.  I'm happy to hear you on any of the

10 things we've just discussed, beginning with what Ms.

11 Hajjar said about number 1, whether or not this

12 constitutes a crime of violence under (f)(1).

13         Number 2, whether or not the -- you know, the

14 proffered facts relating to the murder are sufficient to

15 find a serious risk of flight.

16         Number 3, whether or not there is, you know,

17 the extent to which I can rely on Judge Gold's, you know,

18 prior findings.

19         And number 4, anything else you would like to

20 raise.

21         But those are the three issues that we have

22 just had a colloquy about and I'm happy to hear you on

23 any of them.

24         MR. CECUTTI:  Sure.  Thank you.

25         With respect to the (indiscernible) point in

1  terms of the -- I do -- the question of whether or not

2  there is -- well I believe the government indicated that

3  there is ambiguity in the Second Circuit.  I fully agree

4  with that.  I don't think it's clear.  I don't think that

5  *Dillard* is dispositive on the primary issue that your

6  Honor had raised.

7          With respect to the fraud allegations, which we

8  have not discussed today, and I think it's imperative

9  that we do, the government has produced a voluminous

10  discovery concerning the charged offenses in the case.

11  Cell phone discovery, e-mails, documents, lots of

12  records.

13          And it's clear from the discovery that's been

14  produced that Adelle Anderson is the one who had opened

15  life insurance policies in the victim's name, she listed

16  herself as the beneficiary, and falsely pretended to be

17  the victim's sister.  She also was the one who called and

18  emailed with two life insurance companies pretending to

19  be the victim.

20          I -- this is important, your Honor, because in

21  none of the discovery that I've seen is Mr. Martin the

22  one who is contacting life insurance companies, opening

23  life insurance policies, and he is not listed as a

24  beneficiary, and there's no evidence that he and Ms.

25  Anderson were communicating about this plot.  This is all

Proceedings

1  Adelle Anderson in terms of these charges.  And after the

2  victim's death, it's Adelle Anderson who contacts the

3  life insurance company.

4          And again, I raise all of this because I don't

5  believe that the charges against -- the current charges

6  against Mr. Martin are strong.  In fact I think the

7  evidence shows that these charges are weak against him.

8          I can't -- turning to the question of whether

9  or not the proffered facts related to the allegation that

10  Mr. Martin murdered the victim, I can't stress it enough,

11  your Honor.  This investigation is now in year three,

12  it's past year three, and Mr. Martin has not been charged

13  with this murder.

14          The government has said what they've said today

15  concerning allegations, they've said what they've said in

16  the past concerning allegations and other -- and facts

17  that in their view indicate that they have a strong case

18  against Mr. Martin with respect to the murder.  But your

19  Honor, the fact is, is that they have not charged him

20  with it.

21          And so when they present facts to Judge Gold in

22  a detention memo, or they argue facts before your Honor,

23  but they haven't charged him with the murder, that

24  communicates that the government believes that there is

25  real doubt as to his involvement in this murder.  That's

Proceedings

1  the logical conclusion.

2          So the proffered facts that they've made in the

3  past and again today are insufficient to show that he is

4  a serious risk of flight.  Again, he did not go anywhere

5  prior to his arrest.  He remained in the New York/New

6  Jersey area.  And there's no indication whatsoever that

7  he is of greater than ordinary risk.

8          I think it also should be noted on the risk of

9  flight point that Adelle Anderson, the one who has

10  enormously strong evidence against her in terms of the

11  charged offenses, and is also accused of participating

12  and being involved in this murder, is actually out on

13  bail.  She's released.  And I think that that is

14  relevant.

15          In terms of him -- Mr. Martin being a serious

16  risk of obstruction the government only points to this

17  alleged domestic violence history, and I believe there's

18  one -- there was one case in which Mr. Martin was

19  arrested in an incident involving Ms. Anderson, and that

20  matter was dismissed.  Yes, we acknowledge that there was

21  an order of protection, and Mr. Martin abided by that

22  order of protection, but that case, your Honor, was

23  ultimately dismissed.

24          And I think it is an unfair characterization

25  for the government to indicate that there's a domestic

1 violence history between him and Ms. Anderson and then

2 to, oh, then that satisfies the additional (f)(2) factor

3 of him being a serious risk of obstruction. That is way

4 too a leap, your Honor. He is not a serious risk of

5 obstruction; the government has not proffered sufficient

6 facts with respect to that (f)(2) factors.

7 So in our view he's not a serious risk of

8 flight, he's not a serious risk of obstruction, there is

9 no enumerated (f)(1) offense present in this case, and so

10 he should be released.

11 Now, in terms of conditions we appreciate the

12 fact that he is being investigated for a serious crime,

13 and we have proposed that he be released. We have two

14 sureties, both of his older sisters, both are gainfully

15 employed, do not have a criminal record, they live in

16 Virginia, they've been interviewed by pretrial services.

17 I speak with them regularly. One of them is present on

18 the line today, the other is not because she is working,

19 but he can reside in Virginia with one of his sisters.

20 He can be placed under strict pretrial supervision.

21 Your Honor has an assortment of various

22 conditions to --

23 THE COURT: Mr. Cecutti, though, I mean wajust

24 to -- I don't mean to cut you off, but (indiscernible)

25 this further -- but if I take your argument to a logical

Proceedings

1  conclusion that if we don't fit in 3142(f), right, it

2  can't fit under 3142(e), which means (indiscernible),

3  release.  Right, isn't that how this works under this

4  (indiscernible)?  There is no basis to even impose any

5  conditions.  There's no basis for detention.

6       MR. CECUTTI:  Correct, I agree with that, your

7  Honor.  I'm saying that when you look at 3142 --

8       THE COURT:  We'd offer those conditions in any

9  event.

10       MR. CECUTTI:  Correct, because as I said

11  earlier, all the 3142(g) factors are in play, and the

12  fact that he is under investigation for this serious

13  crime I agree that it is part of the consideration, but

14  it needs to be considered, and considered under the

15  context of release conditions.

16       And so while I agree that Mr. Martin legally

17  should be released on his own recognizance, I am -- I do

18  -- I am open to discussion about conditions, and if the

19  Court has concerns about Mr. Martin being a risk of

20  flight, being concerned about his whereabouts and knowing

21  where he may be, we would agree to him being placed on

22  home detention with electronic monitoring.  He can be --

23  he can wear an ankle bracelet.  Pretrial services in both

24  districts will know exactly where he is at all times.

25       And I also included statistics in my motion, my

1   supplemental motion indicated the --

2           THE COURT:  Can you just hold on for one

3   second.

4   (Court confers with clerk)

5           THE COURT:  Okay.  Mr. Cecutti, continue.

6           MR. CECUTTI:  Thank you.

7           As I included in my supplemental motion, I

8   included statistics where in this district 1 percent of

9   defendants were found to have left the jurisdiction, 99

10  percent don't, and that is -- that also needs to be

11  considered, your Honor.

12          There is -- again, as I said in my initial

13  presentation, the correct result here, based upon the

14  landscape that we are currently facing, is that Mr.

15  Martin be released pursuant to a set of conditions that

16  your Honor deems to be appropriate and reasonable.

17          He is not a serious risk of flight, and there

18  is a way to accomplish both his liberty interests, which

19  are called for, as well as any concerns that the Court

20  may have concerning risk of flight.

21          THE COURT:  Okay.  Thank you.

22          I'm ready to rule at this point.  Just give me

23  one moment.

24          At this point I'm going to ^deny bail.

25          I do accept Mr. Cecutti your argument that

Proceedings

1  because we are in a world of detention 3142(e) applies

2  and that requires one of the gating factors in 3142(f) to

3  be present in order for Mr. Martin to be detained.  And I

4  find that there are multiple gating factors that have

5  been present.

6          First, I find that (f)(1)(a), a crime of

7  violence, is satisfied, although I recognize that it must

8  be a categorical crime of violence, the third charged

9  count which charges a violation of 18 U.S.C. 1028(a)(7),

10 which is aiding and abetting unlawful activity while

11 using identification of another person, typically is not

12 such a categorical offense, and here's it's charged as --

13 in connection with wire fraud.

14         The penalty provisions which are statutory and

15 which are charged here allow the Court to determine that

16 -- and the statutory provisions are in (b)(3)(B) -- that

17 a crime of violence, here namely murder, in connection

18 with the aggravated identity theft, would constitute a

19 sufficient gating factor.

20         But separately and independently the Court

21 finds that Mr. Martin is a serious risk of flight.

22         I find that number 1, Judge Gold already

23 determined that there was a serious risk of flight.  And

24 so to the extent that there's a question of, you know,

25 whether or not this determination had to be previously

Proceedings

1  made or had been made, I do find that he did make that

2  determination because it was a permanent order of

3  detention with leave to amend or leave to reapply.

4  That being said, and therefore I incorporate

5  Judge Gold's findings that Mr. Martin is a risk of

6  flight.  But you know, separate and independent of that I

7  would find that he is a serious risk of flight.

8  The Court cannot ignore, and I think Mr.

9  Cecutti concedes, that in evaluating risk of flight I

10  cannot ignore the 3142(g) factors.  And among them are

11  the fact that the government intends to indict Mr. Martin

12  on interstate federal murder, and I do take it -- I do,

13  you know, appreciate that the government has not yet

14  charged, but investigations last a long time, but also

15  this is an offense for which there is no statute of

16  limitations typically.  And so it would not be -- you

17  know, it would be one thing to say well there's some

18  question about whether they could charge the crime now or

19  -- and if they didn't charge it now they lose it forever.

20  So that's not this situation.

21  But given that the government has indicated

22  that Mr. Martin is in fact -- though there's significant

23  evidence that he in fact committed murder, which frankly

24  has gone unrebutted as far as I can tell in terms of the

25  proffer, and all we have countenancing against him is

Proceedings

1  that's he's not charged with it, which really doesn't,

2  you know, go very far for the reasons I've said, but the

3  evidence that is proffered is quite significant, and so

4  they could charge him at time any time, and that's a

5  significant and serious risk that he would flee.

6          Apart from that, even if they didn't charge him

7  with that, the government proffers that the guideline's

8  range here would be quite significant because it would

9  potentially be the first-degree murder guideline ranges,

10  and that's a significant amount of time that Mr. Martin

11  would be facing even if the government never charges

12  interstate murder, and that alone creates a serious risk

13  that he will flee.

14          So, you know, for those reasons, as well as

15  frankly the amount of time that he's facing irrespective

16  of that, I recognize in other cases it may be that we

17  would not find that the person is a risk of flight, but

18  it is impossible to ignore the uncharged conduct in

19  evaluating whether or not Mr. Martin would flee, even if

20  only facing the identity theft charges, and even if he's

21  not facing the guidelines for first-degree murder.  Why

22  is that?  Because he could be charged with those crimes

23  at any point and either by state or federal authorities,

24  and therefore that creates significant risk that he will

25  not stay in the jurisdiction and be heard to answer for

Proceedings

1  these charges.  So I think all of those gating factors

2  have been met.

3          I do not agree that there's sufficient evidence

4  at this point to satisfy the obstruction inquiry, that

5  would be the other gating factor, I agree with Mr.

6  Cecutti it's a stretch.

7          But for those reasons I find that the 3142(f)

8  serious risk of flight and crime of violence gating

9  factors have been met and as a result I can consider the

10  danger that Mr. Martin faces -- creates for the

11  community, and that certainly is present in light of all

12  of the proffered evidence about his direct involvement in

13  a violent murder for money and his involvement in

14  covering that up.

15          Anything else from the government?

16          MS. HAJJAR:  No, your Honor.

17          THE COURT:  Mr. Cecutti?

18          MR. CECUTTI:  No, your Honor.

19          THE COURT:  Okay.  And just so everyone is

20  aware, I'll enter a permanent order of detention.  You

21  can -- Mr. Cecutti, you have the ability to appeal at

22  this point.  I think it would either -- I think it would

23  go to Judge Donnelly since the case has already been

24  indicted, and you certainly -- you and Mr. Martin have

25  the ability to go to her to evaluate this issue de novo.

1          Okay.  I wish you all well and have a nice day.

2          MR. CECUTTI:  Thank you.

3          THE CLERK:  Thank you everyone, stay safe.

4          MS. HAJJAR:  Thank you.

5               (Matter concluded)

6                    -oOo-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, ROSALIE LOMBARDI, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **8th** day of **August**, 2021.

BY: NANCY GARDELLI



**Transcriptions Plus II, Inc.**