TH/EJD
F. #2020R00708

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                                 Docket No. <u>20-CR-549 (S-1) (AMD)</u>

CORY MARTIN,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>THE GOVERNMENT'S MEMORANDUM OF LAW IN
RESPONSE TO MARTIN'S PRETRIAL MOTIONS</u>


                                                                   BREON PEACE
                                                                   United States Attorney
                                                                   Eastern District of New York
                                                                   271 Cadman Plaza East
                                                                   Brooklyn, New York 11201


Tanya Hajjar
Emily J. Dean
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the defendant Cory Martin's (1) motion to suppress evidence recovered from the search of Martin's residence, including Martin's Samsung and LG cell phones, see ECF No. 69 at 2-11, and (2) renewed request that the Court order the production of Brady and Giglio material, see ECF No. 69 at 11-12.

As set forth below, the defendant's motions are without merit. The warrant supporting the challenged premises search established probable cause that the identified crime was committed, and that evidence of that crime would be found in the premises identified in the warrant. Even if there were some deficiency in the state search warrant—which there is not—the good faith exception applies in this case. The defendant offers no serious argument that the "last resort" of suppression would be warranted here and his motion to suppress should be denied.

The defendant's request that the Court order the production of Brady and Giglio material should also be denied, for the same reasons that the Court denied the defendant's prior motion for the same relief. See ECF No. 62.

BACKGROUND

I. The Offense Conduct, Charges and Arrests

This case arises out of the defendant's scheme to fraudulently obtain life insurance policies in the name of Brandy Odom, murder her, and then claim benefits under the life insurance policies.

Specifically, starting in approximately March 2017, the defendant and his co-defendant Adelle Anderson fraudulently purchased life insurance policies in Odom's name, naming Anderson as the beneficiary on the policies. At this time and until her murder, Odom

lived at 249-45 148th Road, Queens, New York ("the Residence") with Martin, Anderson and Anderson's children. After the defendant and Anderson obtained the life insurance policies in Odom's name, they arranged for premium payments to the life insurance companies to be made by Western Union money order and by using a debit card in Odom's name.

In early April 2018, the defendant strangled Odom to death inside the Residence and severed her corpse into numerous pieces with a saw. In the early morning of April 8 and April 9, 2018, the defendant and Anderson disposed of Odom's body and evidence of Odom's murder at the Residence. As reflected on video surveillance from outside the Residence, the defendant and Anderson made multiple trips to and from the Residence in the process of disposing of evidence related to Odom's murder.

On April 9, 2018, the New York City Police Department ("NYPD") responded to a 911 call reporting a human body inside of Canarsie Park. Upon arriving at the scene of the crime, NYPD officers discovered Odom's dismembered torso and head inside the park. On April 10, 2018, NYPD officers located garbage bags containing Odom's arms, legs, hands and feet in another area of the same park. After Odom's body was discovered, Anderson made several unsuccessful attempts to claim benefits under the life insurance policies.

On November 3, 2020, the defendant and Anderson were arrested and charged by complaint with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A. See ECF No. 1. On December 2, 2020, a grand jury sitting in this District returned an indictment against the defendant and Anderson charging them with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349; aggravated identity theft, in violation of Title 18, United States Code, Section 1028A; and fraudulent use of identification, in

violation of Title 18, United States Code, Section 1028(a)(7).  See ECF No. 14.  On October 27, 2021, a grand jury returned a superseding indictment, charging the defendant with murder-for-hire and conspiracy to commit murder-for-hire, in violation of 18 U.S.C. § 1958, in addition to the crimes charged in the original indictment.  See ECF No. 50.

Trial in this matter is scheduled to begin on October 10, 2023.

II. Search Warrants

A. The April 2018 Premises Warrants

On April 27, 2018, the Honorable Adam Perlmutter, Justice of the Kings County Supreme Court, issued a search and seizure warrant authorizing law enforcement officers to search and photograph the Residence (the "April 2018 Premises Warrant") for "forensic evidence of the presence of Brandy Odom" inside the Residence and authorizing the seizure of "any electronic evidence . . . and documents indicating the title of ownership and possession of the subject location."  See Def. Mot., ECF No. 69, Ex. A.  The April 2018 Premises Warrant contained a detailed description of the Residence.  Id.  It stated the offense for which evidence may be sought, "the homicide of Brandy Odom" on or about April 9, 2018, and enumerated an illustrative list of specific categories of evidence.  Id.  The April 2018 Premises Warrant further authorized search and seizure of electronic devices located inside the Residence for evidence related to Odom's murder.[1]  Id.

In support of the April 2018 Premises Warrant, a Detective with the NYPD submitted an affidavit (the "April 2018 Affidavit") that identified the premises to be searched,

---

[1] On the same date and based on the same supporting affidavit, the Honorable Adam Perlmutter issued a search and seizure warrant authorizing law enforcement officers to search a 2005 black Nissan Maxima registered to Adelle Anderson for forensic evidence of the presence of Brandy Odom inside the vehicle.  See Def. Mot., ECF No. 69, Ex. A.

the evidence to be sized, and the New York State crime for which the investigation had established probable cause, that is, murder in the second degree. Id. ¶ 2. Next, the April 2018 Affidavit set forth the evidence and information that established probable cause, including, among other facts, that (1) Odom's dismembered body was discovered in Canarsie Park in Brooklyn on April 9, 2018; (2) Odom's limbs had been severed with a cutting instrument and bagged in large black garbage bags; (3) Odom resided at the Residence with Anderson and the defendant; (4) the defendant claimed to have last seen Odom at their shared residence on April 2, 2018; (5) the defendant and Anderson informed the NYPD that Odom's primary source of income was prostitution and Odom used the Internet to find clients; (6) video surveillance capturing the Residence was reviewed by law enforcement from April 2, 2018 through April 9, 2018 to track Odom's whereabouts, and at approximately 6:08 a.m. on April 9, a black vehicle (consistent with Anderson's vehicle) was captured reversing into the driveway at the Residence and two individuals loaded what appeared to be dark-colored bags into the trunk of the vehicle before driving away; and (7) Adelle Anderson was the registered owner of a black Nissan Maxima. Id. ¶¶ 1-30.

Law enforcement executed the April 2018 Premises Warrant on April 28, 2018. During the execution of the April 2018 Premises Warrant, law enforcement officers recovered, among other things, Brandy Odom's New York State driver license, Odom's social security card, black garbage bags, two boxes of latex blue gloves, a heavy duty tarp, a towel with blood on it, a tank top with blood on it, numerous items of clothing, bedding, towels, and wash clothes, various cutting instruments, a black bucket, drain pipes, water samples, and various electronic devices, including an LG cell phone with IMEI Number 354447090734190 (the "LG Phone") and a Samsung cell phone with IMEI Number 355620084601133 (the "Samsung Phone") (collectively,

4

"the Martin Devices"). During the execution of the April 2018 Premises Warrant, the defendant, who was present during the execution of the warrant, handed the Martin Devices to a NYPD detective.

B. The 2018 State Warrants for the Martin Devices

Although the April Premises Warrant authorized a forensic extraction of electronic devices located in the Residence, KCDA sought an additional search warrant authorizing the search of the Martin Devices. On July 3, 2018, the Honorable Matthew J. D'Emic, Justice of the Kings County Supreme Court, issued search warrants authorizing law enforcement to search the Martin Devices for evidence related to Odom's homicide within the period of March 26, 2018 through and including April 28, 2018 (the "July 2018 Devices Warrants").[2] See Def. Mot., ECF No. 69, Ex. B.

C. The October 2020 Federal Warrant for the Martin Devices

In 2020, as part of the government's investigation in this case, Special Agent Christopher Kottmeier of the Federal Bureau of Investigation submitted an affidavit (the "October 2020 Affidavit" to the Honorable Peggy Kuo, United States Magistrate Judge for the Eastern District of New York, in support of an application to search the Martin Devices for evidence of federal offenses. See Def. Mot., Ex. C. Judge Kuo issued the warrant (the "2020 Federal Devices Warrant") authorizing the search of the Martin Devices.

---

[2] On August 14, 2018, the Honorable Jane C. Tully, Justice of the Kings County Supreme Court, issued another search warrant for the Martin Devices because the Martin Devices had to be submitted to Cellebrite, a private entity with the software capabilities necessary to access the data within the Martin Devices. Thereafter, on August 22, 2018 and December 13, 2018, two additional search warrants were issued authorizing law enforcement to search the Samsung Phone and the LG Phone for evidence related to Odom's homicide without date restrictions.

ARGUMENT

I.     The Defendant's Motion to Suppress is Meritless and Should Be Denied

The defendant Cory Martin moves to suppress the evidence seized in the execution of the April 2018 Premises Warrant at the residence he shared with Anderson and Odom.  As set forth below, the defendant's arguments that the April 2018 Premises Warrant lacked probable cause and was overbroad are without merit.  Even if those arguments were meritorious, however, his motion would still fail.  Nine search warrants, issued by six different judges, provided law enforcement with authorization to search the Martin Devices, and the NYPD (and subsequently, the federal agents in this case) relied in good faith on the magistrate judges' probable cause determinations.  The defendant offers no evidence of deliberate, reckless or grossly negligent law enforcement conduct, and there is absolutely no basis for the Court to exercise the "last resort" of suppression.

Although the bulk of the defendant's motion is addressed to the suppression of evidence "recovered from the search of Cory Martin's home," see Def. Mot. at 2, the motion also includes several references to evidence related to the search of a 2005 black Nissan Maxima registered to Adelle Anderson (the "April Vehicle Warrant").  To the extent the defendant seeks to suppress evidence related to the April Vehicle Warrant, he has put forth no facts whatsoever suggesting that he has standing to do so.  See United States v. Watson, 404 F.3d 163, 166 (2d Cir. 2005) ("The defendant bears the burden of proving that he had a legitimate expectation of privacy[.]" (internal quotation marks and alterations omitted)).

A. Applicable Law

1. Probable Cause

The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Whether the "probable cause" clause of the Fourth Amendment is satisfied depends on the "totality of the circumstances." United States v. Wagner, 989 F.2d 69, 71-72 (2d Cir. 1993). As to each request to search, "[t]he issuing judicial officer must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. at 72 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)); accord Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007).

Probable cause "does not demand any showing that a good-faith belief be 'correct or more likely true than false.'" Walczyk, 496 F.3d at 157 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). Rather, probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable." Id. "A showing of nexus [between the criminal activity and the thing to be searched] does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." United Stacates v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks omitted).

In considering a challenge to the probable cause determination, the court reviews the search warrant affidavit "simply to ensure that the magistrate had a substantial basis for

concluding that probable cause existed." United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993) (citations and internal quotation marks omitted); accord Singh, 390 F.3d at 181. This is not a de novo review. Gates, 462 U.S. at 236. A judge's determination of probable cause is entitled to substantial deference and "doubts should be resolved in favor of upholding the warrant." Rosa, 11 F.3d at 326; United States v. Martin, 157 F.3d 46, 52 (2d Cir. 1998). Resolving doubts in favor of the warrant encourages the use of the warrants and also recognizes that "once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case." Gates, 462 U.S. at 237 n.10.

2. Particularity / Overbreadth

"A warrant . . . can be unconstitutionally infirm in two conceptually distinct but related ways: either by seeking specific material as to which no probable cause exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries." United States v. Cohan, 628 F. Supp. 2d 355, 359 (E.D.N.Y. 2009); United States v. Hill, 459 F.3d 966, 973 (9th Cir. 2006) ("Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.").

The Fourth Amendment's particularity requirement "makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another," Marron v. United States, 275 U.S. 192, 196 (1927), by foreclosing a "general, exploratory rummaging in a person's belongings," Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). To satisfy the particularity requirement, warrants must specify (1) the offenses for which probable cause has been established; (2) the place or thing to be searched; and (3) the items to be seized relating to

8

the specified offenses.  United States v. Galpin, 720 F.3d 436, 445-46 (2d Cir. 2013); United States v. Purcell, 967 F.3d 159, 178 (2d Cir. 2020) (internal quotation marks omitted).

"[B]readth and particularity are related but distinct concepts."  United States v. Ulbricht, 858 F.3d 71, 102 (2d Cir. 2017).  "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."  Galpin, 720 F.3d at 446 (internal quotation marks omitted). "Nevertheless, 'in many cases, the volume of records properly subject to seizure because of their evidentiary value may be vast.'"  Purcell, 967 F.3d at 179 (quoting Ulbricht, 858 F.3d at 100). The Second Circuit "has found, for example, that 'a broad warrant allowing the government to search [a defendant's] laptop for potentially extensive evidence of' charged crimes committed using that laptop 'does not offend the Fourth Amendment, as long as that warrant meets the three particularity criteria.'"  Id. (quoting Ulbricht, 858 F.3d at 100).

Accordingly, "broadly worded categories of items available for seizure" do not necessarily render a warrant deficient.  United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990). "Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category."  Riley, 906 F.2d at 843-45 (upholding warrant that authorized a search for "records and other items that constitute evidence of the offenses of conspiracy to distribute controlled substances and distribution of the same").  "It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category. But allowing some latitude in this regard simply recognizes the reality that few people keep

9

documents of their criminal transactions in a folder marked 'drug records.'" Id. at 845; see also Andresen v. Maryland, 427 U.S. 463, 480-82 & n.10 (1976) (upholding warrant that authorized the seizure of "other fruits, instrumentalities, and evidence of crime at this [time] unknown," when limited to a real estate fraud relating to a particular parcel of land); United States v. Young, 745 F.2d 733, 759-60 (2d Cir. 1984) ("[U]se of the term 'other evidence' following the term 'money' was sufficient to permit the agents to seize such manifestations of wealth as furs, jewelry, and expensive automobiles."); United States v. George, 975 F.2d 72, 76 (2d Cir. 1992) (collecting similar cases).

3. Good Faith Exception

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation" of its terms. United States v. Leon, 468 U.S. 897, 906 (1984). The exclusionary rule developed as "a 'prudential' remedy, crafted by the Supreme Court," United States v. Raymonda, 780 F.3d 105, 117 (2d Cir. 2015), and it is neither a "personal constitutional right" nor a means "to 'redress the injury' occasioned by an unconstitutional search," Davis v. United States, 564 U.S. 229, 237 (2009). Rather, "[t]he rule's sole purpose . . . is to deter future Fourth Amendment violations." Id. Accordingly, "the exclusionary rule is designed to deter police misconduct," not mistakes by judges and magistrates. Leon, 468 U.S. at 916.

Thus, even where probable cause is lacking or a warrant is overbroad, suppression will rarely be the appropriate remedy. As the Supreme Court has explained, suppression is the Court's "last resort, not [its] first impulse." Hudson v. Michigan, 547 U.S. 586, 591 (2006). Suppression is an appropriate remedy only where it deters "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring v. United States, 555 U.S. 135, 144 (2009). The Supreme Court has explained that where law

enforcement has obtained a warrant, suppression will be "an appropriate remedy" only where (1) "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) "the issuing magistrate wholly abandoned his judicial role," such that "no reasonably well trained officer should rely on the warrant;" (3) the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "facially deficient" in that it "fail[s] to particularize the place to be searched or the things to be seized . . . that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923; United States v. Clark, 638 F.3d 89, 99 (2d Cir. 2011) (holding that warrant lacked probable cause to believe evidence of criminal conduct would be found throughout the premises searched, but citing Leon, applying good faith exception and reversing district court's grant of suppression motion).

As the Second Circuit has explained, "[a]pplication of the exclusionary rule depends on the 'efficacy of the rule in deterring Fourth Amendment violations in the future' as well as a determination that 'the benefits of deterrence . . . outweigh the costs.'" United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010) (quoting Herring, 555 U.S. at 141). Accordingly, "'[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct.'" Rosa, 626 F.3d at 64 (quoting Herring, 555 U.S. at 143). A reviewing court will therefore "look to whether 'police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" Rosa, 626 F.3d at 64 (quoting Herring, 555 U.S. at 143); see also Leon, 468 U.S. at 911 ("[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the calculus."). "'The pertinent analysis of

11

deterrence and culpability is objective,' and '[this Court's] good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" Rosa, 626 F.3d at 64 (quoting Herring, 555 U.S. at 145).

> B. The April 2018 Premises Warrant Was Supported by Probable Cause and Was Not Overbroad

The search of the Residence authorized by the April 2018 Premises Warrant was fully supported by ample evidence contained in the April 2018 Affidavit. The April 2018 Affidavit explained that Odom had lived at the Residence with the defendant and Anderson and that law enforcement had reviewed surveillance video from outside the Residence from April 2, 2018 (the day that Martin and Anderson had last claimed to have seen Odom inside the Residence) until the day Odom's corpse was discovered in Canarsie Park "in order to trace the victim's possible movements." Def. Mot., ECF No. 69, Ex. A ¶ 25. The April 2018 Affidavit also explained that hours before Odom's corpse was discovered, individuals with access to the Residence loaded what appeared to be dark-colored bags into a vehicle and transported them away from the Residence and that Odom's arms and legs were found in Canarsie Park in black garbage bags. Id. ¶¶ 6, 27-29. The defendant's assertion, therefore, that the "totality of the circumstances here does not indicate a 'fair probability' that evidence of Brandy Odom's murder was likely to be found" at the Residence, Def. Mot. at 7, strains credulity.

As the Second Circuit has explained, "[a] showing of nexus [between the criminal activity and the thing to be searched] does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." Singh, 390 F.3d at 182 (internal quotation marks omitted). Moreover, the government need not establish that the place to be searched will contain "smoking gun," or direct, evidence of the

12

identified crimes. See United States v. Abu-Jihaad, 630 F.3d 102, 132 (2d Cir. 2010) (explaining, in context of more exacting standard for admission of evidence under Rule 401, that to be relevant "evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt"); see also Old Chief v. United States, 519 U.S. 172, 179 (1997) ("The fact to which the evidence is directed need not be in dispute."). The facts alleged in the April 2018 Affidavit easily met this standard.

The defendant also argues that the April 2018 Affidavit lacked probable cause because "the surveillance that the application relied on does not show what the detective purported it showed." Def. Mot. at 6. The government further submits that a careful review of the surveillance video quite clearly depicts two individuals hoisting what appears to be a dark-colored bag into the trunk of the vehicle shortly after 6 A.M. on April 9, 2018. And, in any event, the defendant's motion concedes that the video surveillance at issue shows two individuals, in the driveway of the Residence, loading items into the trunk of a vehicle that resembled Anderson's car, facts which support the probable cause determination in the April 2018 Premises Warrant.

The defendant also contends that the April 2018 Premises Warrant was overbroad, which is, in effect, an argument that the April 2018 Affidavit failed to establish probable cause for the evidence seized from the Residence. Contrary to the defendant's claims, however, the April 2018 Affidavit set forth facts establishing, among other things, that Odom lived with the defendant and Anderson at the Residence, that Odom was last seen alive at the Residence, and that Odom engaged in prostitution as her primary source of income and used the Internet to find clients. Id. ¶ 20. These facts, among others, establish a fair probability that electronic devices located at the Residence would contain evidence, circumstantial or otherwise, of Odom's

13

murder. The defendant's further claim that "law enforcement did not even have reason to believe [the defendant] was a suspect," Def. Mot. at 7, misapprehends the probable cause showing necessary to secure the search warrant. The April 2018 Premises Warrant authorized law enforcement to search the last known residence of Brandy Odom, the murder victim, for evidence of her murder. Contrary to the defendant's suggestion, the question for the reviewing magistrate was not whether there was probable cause to believe that the identified crime was committed by the <u>defendant</u>, but whether there was probable cause to believe that the crime identified in paragraph two, <u>i.e.</u>, the murder of Brandy Odom, had been committed and whether there was a "fair probability" that evidence of that crime would be found in the places to be searched.

In sum, the April 2018 Premises Warrant was abundantly supported by probable cause, and, particularly in light of the Second Circuit's instruction to afford "considerable deference to the probable cause determination of the issuing magistrate," <u>Clark</u>, 638 F.3d at 93, the defendant's arguments should be rejected.

    C.    <u>The April 2018 Premises Warrant Is Particular</u>

The defendant also argues, without basis, that the April 2018 Premises Warrant was effectively the "kind of general search warrant prohibited by the Fourth Amendment." Def. Mot. at 7. The April 2018 Premises Warrant particularly identifies the criminal offense of which evidence is sought, <u>i.e.</u>, the homicide of Brandy Odom on or about April 9, 2018, and the place to be searched. The defendant argues that the April 2018 Premises Warrant "did not sufficiently particularize the items to be seized," Def Mot. at 8, but the Warrant includes a detailed and illustrative list of categories of items to be seized, including forensic evidence, items associated with cutting up and disposing of a body and electronics. This is "sufficiently specific to permit the rational exercise of judgment in selecting what items to seize," and is a type of search

14

warrant that "courts in this Circuit have routinely upheld." United States v. Messalas, No. 17-CR-339 (RRM), 2020 WL 4003604, at *5 (E.D.N.Y. July 14, 2020); see, e.g., Riley, 906 F.2d at 843; United States v. Lustyik, 57 F. Supp. 3d 213, 227-28 (S.D.N.Y. 2014); United States v. Levy, No. 11-CR-62 (PAC), 2013 WL 664712, at *9 (S.D.N.Y. Feb. 25, 2013).

   D. <u>There Is No Basis for Suppression of the Federal Search Warrant</u>

   Even if April 2018 Premises Warrant had a defect warranting suppression (which there is not), there would still be no basis to challenge the subsequent federal search warrant. The 2020 Federal Devices Warrant was issued more than two years after the April 2018 Premises Warrant was issued and the defendant makes no argument that the 2020 Federal Devices Warrant was infirm in any way.

   The defendant concedes, Def. Mot. at 10, that the "mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant." United States v. Trzaska, 111 F.3d 1019, 1026 (2d Cir. 1997) (internal quotation marks and citations omitted). The defendant then claims, in a single conclusory and unsupported sentence, that "there was no probable cause" for the 2020 Federal Devices Warrant.

   To the contrary, the 2020 Federal Devices Warrant was issued based on a substantial showing of probable cause that was, in addition, sufficiently attenuated from any purported constitutional violation in the April 2018 Premises Warrant to dissipate any claimed taint. See, e.g., United States v. Najjar, 300 F.3d 466, 479 (4th Cir. 2002) ("Even if the original illegal search in some slight way was a but-for cause of the later searches, [law enforcement's] two-year investigation and the intervening circumstances were sufficient to break the causal link between any primary illegality and later obtained evidence.").

15

E.  Law Enforcement Relied Upon Each of the Warrants in Good Faith

Finally, even if there were some deficiency in the April 2018 Premises Warrant, which there is not, the evidence from that warrant should not be suppressed because law enforcement relied upon each subsequent warrant in good faith.

In arguing to the contrary, the defendant asserts that the April 2018 Premises Warrant was "so facially deficient" that reliance on it was not objectively reasonable. Def. Mot. at 9. But, as explained above, the April 2018 Premises Warrant was not facially deficient and there is no allegation that law enforcement acted in bad faith in seeking or relying upon the warrants, or that law enforcement knew or should have known of some legal infirmity. In support of his argument, the defendant relies only on cases inapplicable where, as here, the government has identified the particular items to be seized relating to the specified offense. See Galpin, 720 F.3d at 445-46.

In all, nine search warrants were issued by six different judges—five New York state judges and one federal magistrate—providing authorization to search the Martin Devices. Suppression is therefore unwarranted.

II.  The Motion for Additional Disclosures Should Be Denied

The defendant also "renews his request that the Court order the Government to produce all evidence in its possession, custody or control that is favorable to him." Def. Mot. at 11-12. This Court has already ruled on a nearly-identical request by Martin for Brady material and impeachment material. See ECF No. 62.

For substantially the same reasons as set forth in the government's prior response, see ECF No. 61, and the Court's Memorandum and Order denying Martin's prior motions, see ECF No. 62, this motion should be denied. The government again affirms that it is aware of and

will continue to comply with its Brady obligations in this case, and will produce material pursuant to Giglio shortly in advance of trial in this case.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendant's motions are without merit and should be denied.

Dated:    Brooklyn, New York
           March 27, 2023

                              Respectfully submitted,

                              BREON PEACE
                              UNITED STATES ATTORNEY
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201

Tanya Hajjar
Emily Dean
Assistant United States Attorneys
      (Of Counsel)